**Case No. 13-4952(L)**
**Consolidated W/13-4962**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

_____

### UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*-v.-*

### KOYA TIFFANY ROOKE,

### and

### QUINTAVIS DEONTE DUMAS,

*Defendants-Appellants.*

_____

Appeal from the United States District Court
for the Eastern District of Virginia, Alexandria Division
Honorable District Judge Gerald Bruce Lee
District Court Case No: 1:13-CR-00286-GBL-2

_____

## OPENING BRIEF OF DEFENDANTS-APPELLANTS
## KOYA TIFFANY ROOKE AND QUINTAVIS DEONTE DUMAS

John O. Iweanoge, II
THE IWEANOGES FIRM, P.C.
IWEANOGE LAW CENTER
1026 Monroe Street, NE
Washington, DC 20017
Phone: (202) 347-7026
Fax:    (202) 347-7108
Email: joi@iweanogesfirm.com
*Counsel for Appellant Koya Tiffany Rooke*

James W. Hundley
BRIGLIA HUNDLEY, P.C.
1921 Gallows Road, Suite 750
Vienna, Virginia 22182
Phone: (703) 883-0880
Email: jhundley@ brigliahundley.com
*Counsel for Appellant*
*Quintavis Deonte Dumas*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

The undersigned counsel of record certifies that the following individuals have an interest in the outcome of this case:

Koya Tiffany Rooke
Quintavis Deonte Dumas
Honorable Gerald Bruce Lee
John O. Iweanoge, Trial and Appellate Counsel for Koya Tiffany Rooke
James W. Hundley, Trial and Appellate Counsel for Quintavis Dumas
Michael J. Frank, Trial and Appellate Counsel for the Appellee
Christine Bogle, Trial and Appellate Counsel for the Appellee

I hereby certify that, to the best of my knowledge, the preceding list is a complete list of all parties having an interest in the outcome of this case.

Further, pursuant to F.R.A.P. 26.1, the Appellants submits that they are not a corporation, have no corporate affiliation, and this case does not have any affiliation with any non-government corporate entity.

By: _____
John O. Iweanoge, II
James W. Hundley, Esq.
Attorneys for the Appellants

# TABLE OF CONTENTS

Certificate of Interested Persons And Corporate Disclosure Statement……………ii

Table of Authorities…………………………………………………………..iv, v

Statement of Jurisdiction…………………………………………………………vi

Statement of Issues………………………………………………………………1

Statement of the Case……………………………………………………………1

Statement of the Facts……………………………………………………………4

Summary of the Argument.................................................................12

Law and Argument…………………………………………………………..13

I.     The District Court Erred in Failing to Grant the Appellant's
       Motion for Judgment of Acquittal, as the Prosecution Failed
       to Provide Sufficient Evidence that the Appellant violated 18
       U.S.C. §1591(a)(2)……………………………………………………13

II.    The Jury Received Improper, Additional Instructions From the
       Court After the Rule 30 Conference and Closing Argument,
       Without any Supplemental Argument Time on the New
       Instructions Afforded to the Defense, Resulting in Prejudicial
       Error to the Appellant.................................................................20

Conclusion.................................................................27

Statement Regarding Oral Argument .................................................................29

Certificate of Compliance .................................................................30

Certificate of Service .................................................................31

# TABLE OF AUTHORITIES

*Cases:*

*Cage v. Louisiana*, 489 U.S. 39 (1990)……………………………………17, 18

*Dowling*, 493 U.S. at 352-53, 110 S.Ct. at 674…………………………………...17

*Glasser v. United States*, 315 U.S. 60, 80, 86 L.Ed. 680, 62 S.Ct. 457 (1942)…...20

*Jackson v. Virginia*, 443 U.S. 307, 319 (1979)…………………………………...15

*Montana v. Egelhoff*, 518 U.S. 37, 41-44, 116 S.Ct. 2013, 2017, 135 L.Ed.2d 361 (1996)…………………………………………………………………………...17

*Smalis v. Pennsylvania*, 476 U.S. 140, 144, 90 L.Ed.2d 116, 106 S.Ct. 1745 (1986)…………………………………………………………………………19, 20

*Snyder v. Massachusetts*, 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934)…………………………………………………………………………...16

*Solesbee v. Balkcom*, 339 U.S. 9, 16, 70 S. Ct. 457, 461, 94 L. Ed. 604 (1950)….17

*United States v. Alvarez*, 351 F.3d 126 129 (4th Cir. (2003)………………........20

*United States v. Byfield*, 289 U.S. App. D.C. 71, 928 F.2d 1163, 1165 (D.C. Cir. 1991)…………………………………………………………………………20

*United States v. Gomez*, 369 U.S. App. D.C. 28, 431 F.3d 818, 819 (D.C. Cir. 2005)…………………………………………………………………………22

*United States v. Hernandez*, 251 U.S. App. D.C. 5, 780 F.2d 113, 120 (D.C. Cir. 1986)…………………………………………………………………………20

*United States v. Johnson*, 293 U.S. App. D.C. 213, 952 F.2d 1407, 1409 (D.C. Cir.1992)………………………………………………………………………..20

*United States v. Lovasco*, 431 U.S. 783, 790, 97 S.Ct. 2044, 2049, 52 L.Ed.2d 752 (1977)…………………………………………………………………………...17

*United States v. Martinez* , 763 F.2d 1297, 1312 (11th Cir. 1985)……………......16

*United States v. Simms*, 508 F. Supp. 1188, 1202 (W.D. La. 1980)………………16

*United States v. Singleton*, 226 U.S. App. D.C. 422, 702 F.2d 1159, 1163 (D.C. Cir. 1982)………………………………………………………………….....20

*Winship*, 397 U.S. 358, 364 (1970)……………………………………...18, 19

**Statutes and Other Authorities:**

18 U.S.C. §1591(a)(2) ……………………………………1, 7, 8, 14, 15, 19, 22, 23

18 U.S.C. §2252A(g)…………………………………………………….....1, 3, 8

18 U.S.C. §2423(a)(2) …………………………………………………..1, 9

18 U.S.C. §3231…………………………………………………………6

28 U.S.C. §1291…………………………………………………………6

## STATEMENT OF JURISDICTION

The district court had jurisdiction over this matter under 18 U.S.C. §3231 as Defendants-Appellants Koya Rooke ("Ms. Rooke") and Quintavis Dumas ("Mr. Dumas") were charged with an offense against the United States under 18 U.S.C. §1591(a)(2) (Count Three). Joint Appendix ("J.A.") 23-31. This Court has jurisdiction under 28 U.S.C. §1291, as the district court entered a final ruling on the merits on December 11, 2013. J.A. 1523-1528. A timely notice of appeal was filed by Mr. Rooke on December 13, 2013 and by Mr. Dumas on December 17, 2013. J.A. 1529-1530.

## STATEMENT OF ISSUES

I.    Whether the District Court Erred in Failing to Grant the Appellant's Motion for Judgment of Acquittal, as the Prosecution Failed to Provide Sufficient Evidence that the Appellant Violated 18 U.S.C. §1591(a)(2).

II.   Whether the Jury Received Improper, Additional Instructions From the Court After the Rule 30 Conference and Closing Argument, Without any Supplemental Argument Time on the New Instructions Afforded to the Defense, Resulting in Prejudicial Error to the Appellant.

## STATEMENT OF THE CASE

On June 26, 2013, the grand jury for the Eastern District of Virginia returned an indictment against Koya Tiffany Rooke and Quintavis Dumas ("the Appellants"). J.A. 23-31.   The Appellants were charged with engaging in a Child Exploitation Enterprise in violation of 18 U.S.C. §2252A(g) (Count One); Sex Trafficking of a Child in violation of 18 U.S.C. §1591(a)(2) (Counts Two-Five); and Interstate Transportation of a Minor for Purposes of Prostitution in violation of 18 U.S.C. §2423(a)(2). J.A. 23-31. The Appellants entered not guilty pleas to the charges against them. J.A. 8.

Prior to trial, Ms. Rooke filed a Motion to Suppress Statements and Points and Authorities in Support Thereof. J.A. 9. The court granted Ms. Rooke's Motion to Suppress Statements because the government failed to show that she was informed of her rights and ordered that all of her statements made on January

1

11, 2013 and January 12, 2013 be suppressed.  J.A. 12.

On September 4, 2013, the Appellants proceeded to jury trial before the Honorable Gerald Bruce Lee, in the United States District Court for the Eastern District of Virginia, Alexandria Division.   On September 10, 2013, after the government rested its case-in-chief, the Appellants moved for judgments of acquittal.  The motions were denied.  J.A. 12.  The jury returned a verdict finding both Appellants guilty of Count Three.  Mr. Dumas was found not guilty on Counts One, Four and Five.  Ms. Rooke was found not guilty on Counts Four and Five.  The jury was unable to reach a unanimous verdict on the remaining counts. J.A. 1161.  Following the return of the verdict, the district court declared a mistrial on the remaining counts and ordered that a Pre-Sentence Investigation Report (PSR) be completed in preparation for sentencing. J.A. 1161-1164.

Thereafter, the government filed a Motion to Dismiss Certain Counts of the Indictment.   J.A. 1456-1458.   The court granted the government's motion and dismissed Count One as to Ms. Rooke and Counts Two and Six as to both the Appellants.  J.A. 1491.

Following the return of the verdict, Ms. Rooke filed a Motion for Acquittal on Counts One and Three and/or New Trial on Count Three.  J.A. 1436-1444.  Mr. Dumas joined in these motions.  J.A. 1472.  As to the conviction on Count Three,

the Appellants argued that the evidence was insufficient to sustain the conviction. The motions were denied.  J.A. 1490-1491.

The Appellants proceeded to sentencing on December 6, 2013.  Both were sentenced to the mandatory minimum sentence of 120 months incarceration.  The Final Judgment was entered by the district court on December 11, 2013.    J.A. 1517-1528.  Timely notices of appeal were filed by both Appellants.  J.A. 1529-1530.

## STATEMENT OF FACTS

The facts relevant to the instant case show that between May 1, 2012 and December 20, 2012, the Appellants, Koya Tiffany Rooke, also known as "KK," and Quintavis Deonte Dumas, also known "Tay," were associated with various acts of prostitution within multiple states. J.A. 23-31. Both Ms. Rooke and Mr. Dumas are from Georgia. During the time of the events alleged in the indictment, Ms. Rooke and Mr. Dumas were in a committed relationship despite the fact that they lived off Ms. Rooke's earnings from prostitution.

The Appellants were affiliated with several other individuals involved in sex trafficking including Edwin Barcus, Jr. ("Barcus"), Mr. Dumas' cousin, Joshua Dumas ("Joshua"), a man known as "Dread," and a man known as "Hollywood." J.A. 23-31. Barcus and Joshua acted as "pimps" recruiting various women, including 16 and 17 year old girls, in a sex trafficking enterprise. J.A. 23-31. The underage girls included "TJ" who was born in July 1995 and who was prostituted when she was 16 and 17 years old; "CF" who was born in March 1995 and who was prostituted when she was 17 years old; "DF" who was born in October 1995 and who was prostituted when she was 16 and 17 years old; "DS" who was born in January 1995 and who was prostituted when she was 17 years old; and "AM" who

4

was born in September 1995 and who was prostituted when she was 17 years old.[1]

The facts at trial showed that all of the underage girls prostituted for Barkus or Joshua and that Ms. Rooke and Mr. Dumas conducted Ms. Rooke's prostitution activities separately.  J.A. 958-962.  Barkus drove the underage prostitutes from one place to another doing "outcalls," and he drove prostitutes from Atlanta to Charleston and Myrtle Beach, South Carolina.  J.A. 958-962.  Barkus and Joshua would move from state to state with their prostitutes and stay at various hotels for short periods of time.  J.A. 971.  The Appellants often traveled and stayed in the same hotels as Barkus, Joshua, and the other prostitutes.  J.A. 971.  Sometimes Ms. Rooke rented cars and booked hotel rooms for the group because she was one of the few people in the group with proper identification.  J.A. 971.

During the period of alleged events, prostitution took place in Tennessee, Georgia, South Carolina, Florida, and Virginia.  J.A. 968.  Once the prostitutes and pimps arrived at a hotel, they would use various laptop computers and cell phones to access a website called "Backpage.com" where advertisements were posted to solicit potential customers.  J.A. 967.  The prostitutes gave a portion of the money they earned to either  Barkus or Joshua, depending on which one worked as their pimp.  J.A. 972.  Ms. Rooke and Mr. Dumas kept the money Ms. Rooke earned.

---

[1] For purposes of this appeal, the minors involved are being referred to only by their initials.

They did not give any money to Barkus or Joshua, and they did not receive money from the other prostitutes.  J.A. 972.

On December 11, 2012, an undercover officer with the Fairfax County police responded to an ad on Backpage.com .  He called the number listed and was directed to a hotel in Herndon, Virginia.  After arriving, he negotiated commercial sex acts with TJ and DS.  Thereafter, several additional officers entered the hotel room and arrested TJ, DF, DS, AM, and Devona.  J.A. 633.  Neither Ms. Rooke nor Mr. Dumas were present at the time of these arrests.  In fact, they were staying in a different hotel in Herndon.

The charges were dropped against all of the underage girls in exchange for their cooperation in testifying at trial.  J.A. 488.

Ms. Rooke was not arrested until May 6, 2013, in Atlanta, Georgia.  J.A. 5.  Mr. Dumas was arrested at his home in Atlanta on April 30, 2013.  J.A. 5.  On June 26, 2013, a six count indictment was returned against the Appellants in the United States District Court for the Eastern District of Virginia, Alexandria Division.  The indictment charged one count of Engaging in a Child Exploitation Enterprise, four counts of Sex Trafficking of a Minor, and one count of Interstate Transportation of a Minor for Prostitution.  J.A. 23.  Ultimately, the Appellants were only found guilty under Count 3 for sexually trafficking TJ during December 9-11, 2012, in

6

Herndon, Virginia.    Each Appellant received a sentence of 120 months incarceration.    On all other charges, the Appellants were either acquitted or the charges were dismissed by the government.  J.A. 1523-1528.

At trial, TJ was called as a witness by the government and testified that in May of 2012, Barcus asked her and several other underage girls to prostitute for him.  TJ refused.  J.A. 445-446.  In June of 2012, Joshua asked TJ to work as a prostitute for him.  This time, she accepted.  J.A. 457.  From June to August, 2012, TJ prostituted with Joshua and Barcus in Savannah, Charleston, Atlanta, Macon, Augusta, Tallahassee, and Marietta.   J.A. 457-458.  She explained that Joshua and Barcus would post advertisements on Backpage.com in order to solicit customers for her.  J.A. 458.  She also posted occasionally posted her own ads.  She, Joshua, and Barcus would use DF's computer to place the ads. J.A. 538.  TJ never worked as a prostitute for Mr. Dumas, and she never gave him any money she earned.  J.A. 500, 509.

TJ's cousin, DS, testified that Mr. Dumas served as Ms. Rooke's pimp,  that Barkus pimped DF, AM and the other girls, and Joshua pimped DS and TJ.  J.A. 635.  TJ specifically testified that Mr. Dumas was not her pimp and that she worked for Barcus and Joshua.   She said Joshua explained the rules of prostituting to her and that Joshua received all of the money she earned.  J.A. 468.  She

7

testified that Barcus and Joshua supplied her with a drink called "Lean" and with marijuana and "molly." J.A. 538-540. Barcus and Joshua also provided her with disposable cell phones to communicate with potential customers responding to her ads on Backpage.com. J.A. 491. Barcus, Joshua, and DF supplied her with the condoms she used while prostituting. J.A. 538.

TJ said that around August of 2012, Joshua hit her when she said she wanted to leave prostitution. She also said that Mr. Dumas never hit her or any other girl. J.A. 514-515. Shortly thereafter, TJ returned to her mother's home in LaGrange, Georgia. J.A. 470-472. In September of 2012, she received a Greyhound bus ticket from DF in order to travel to Tennessee. She then traveled from Savannah to Atlanta, Georgia and eventually to Nashville, Tennessee. J.A. 472-473. TJ returned to prostituting with Joshua in November, 2012, at the "Microtel. The Appellants were staying at the same hotel when TJ arrived, but they always stayed in a separate room. J.A. 478, 506.

In early December, 2012, TJ worked out of a Motel 6 in Atlanta with her cousin DS and Joshua. J.A. 479-480. While at the Motel 6 in Atlanta, Joshua and TJ were visited by Barcus. During the visit, Barcus told Joshua, "Ya'll need to come up here. . . There's a lot of money here" in Virginia. J.A. 481-482. Joshua agreed, so Barcus bought them bus tickets because they could not afford them. TJ,

DS, and Joshua then traveled to Richmond, Virginia on a Greyhound bus. J.A. 482. While in route, TJ became upset because she believed Joshua was showing too much affection to her cousin, DS. TJ considered Joshua to be her boyfriend. An altercation took place during which Joshua choked TJ. J.A. 482-483.

On December 9, 2012, the three arrived in Virginia, where they were met by Barcus and Mr. Dumas. The group drove to a Hyatt hotel in Herndon. Ms. Rooke and Mr. Dumas were staying at the Hyatt in Room 334. They rented the room on December 9 and departed on December 10. J.A. 1452. DF, AM, Trey, Dread, JD, and Barcus were also at the Hyatt. J.A. 484. The next night, the Appellants rented a room at the Crowne Plaza, Dulles Airport, Room 105. They stayed in this room for two nights. J.A. 1436-1444.

Unlike the Appellants, the rest of the group stayed at the Hyatt until the police sting on December 11. When TJ, DS, and Joshua arrived, DF, AM, Dread, JD, and Barcus had been checked-in to the hotel since December 7. TJ and DS worked out of Room 214, a room with an arrival date of December 7, 2012 and a departure date of December 12, 2012. DF used her fake identification to rent the room under the alias of "Shayla Shaw." J.A. 549-550, 1451. The police sting occurred in Room 214 on December 11. TJ and DS, among others, were arrested in this room. J.A. 549-550.

TJ testified that while in Herndon, in order to solicit customers during her stay at the Hyatt, an ad was posted on Backpage.com.  Regarding the posting of ads in Herndon, TJ testified "Sometimes I would post myself and sometimes "Boo" (Barcus) would post me, and sometimes Josh would post me."  When asked if she posted the ads "using [DF's] computer," TJ responded, "[I]n Herndon, yeah." J.A. 538.

TJ stayed in the Hyatt for two nights before her arrest.  On the first night of her arrival, she had one customer in her own room and on the second night she had a "two-girl special" scheduled with DS in Room 214. J.A.  549-550.    The customer for the two-girl special was the undercover police officer.  While the police interrogated the girls, Barcus hid in the hotel room closet and was eventually able to escape out of a window, temporarily evading arrest.  J.A. 550.

The customers TJ received at the Hyatt, including the undercover officer, were solicited through advertisement placed on Backpage.com at the direction of Barcus.  Barcus told TJ the prices she was to charge during their stay at the Hyatt. J.A. 486.  TJ testified she gave the money she earned to Joshua who in turn gave it to Barcus.   J.A. 486.  When asked at trial "Did you want to perform sex acts with customers in Virginia?", TJ testified she told Barcus that she did not, but Barcus "just kind of laughed it off."  When she told Joshua she did not want to perform

10

sexual acts, he told her, "It won't be forever.  It's just for now."  J.A. 487.

On September 11, 2013, after the presentation of all evidence, the Court proceeded to instruct the jury in preparation for deliberation.  J.A. 1022-1121.  On September 13, 2013, the jury sent out several written questions to the Court, including a question concerning jury instructions 17 and 36.  J.A. 1140.  The court answered the jury questions and the Appellants' respective counsel objected to the jury instructions.  These instructions to the jury included:

**"Additional Instructions"**

"[T]he Court cannot tell you how to decide the case.  There are limits on what questions I can answer and the way in which I can answer them.  Regarding the views held by other jurors it is entirely up to you to collectively review all the instructions and all the evidence to arrive at a unanimous verdict, if you can do so. Each of the jury should consider the evidence and the instructions as a whole and the additional instructions that have been given you now."

J.A. 1145.

**"Regarding Jury Instruction Number 17"**

"The government can establish the element pertaining to the knowledge of the alleged victims' ages by proof beyond a reasonable doubt in any one of 3 ways: (1) actual knowledge; (2) reckless disregard of the victims' ages (see instruction 16); or (3) by proving the defendant in question had a reasonable opportunity to observe the alleged victim.  (See instruction 17).  The government does not need to do so in all 3 ways."
J.A. 1145.

**"Regarding instruction 36"**

"On page 42 referring to merely being present at the scene of the crime or

11

merely knowing of a crime is being committed or is about to be committed."

This instruction is not in conflict with instruction 17. It means what it says.

If the jury has reached any verdicts concerning any of the counts charged in the indictment. Please let me know. I do not want to know what the verdicts are. I just want to know whether you have reached any verdicts. If so, send a piece of paper that says you reached a verdict on certain counts."

J.A. 1145-1146.

## SUMMARY OF THE ARGUMENT

The district court erred in denying the Appellants' motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure Rule 29(c), based upon the insufficiency of the evidence. The government failed to prove beyond a reasonable doubt that the Appellants committed the charged offense of Sex Trafficking of a Child in violation of 18 U.S.C. §1591(a)(2). Ms. Rooke and Mr. Dumas were two individuals working by themselves in the sex trade. It is true that the Appellants were acquainted with others in the same illegal business. They worked in an environment in which pimps and prostitutes moved from state to state and hotel to hotel, but the Appellants always kept their work separate and apart from others. The Appellants did not make any decisions or provide any direction for the other pimps and prostitutes they knew. They played no role in sexual exploiting anyone else, particularly TJ. TJ was an underage prostitute solely

12

working for, and under the control of, Edwin Barcus and Joshua Dumas.

Further, the jury received improper, additional instructions from the Court after the Rule 30 conference and closing argument, without any supplemental argument on the new instructions afforded to the defense, resulting in prejudicial error to the Appellants.

## LAW AND ARGUMENT

**I.    The District Court Erred in Failing to Grant the Appellant's Motion for Judgment of Acquittal, as the Prosecution Failed to Provide Sufficient Evidence that the Appellant violated 18 U.S.C. §1591(a)(2)**

**Standard of Review:**

Under Rule 29 of the Federal Rules of Criminal Procedure, a district court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a).  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).   A trial judge confronted with a Fed. R. Crim. Proc. Rule 29 for Judgment of Acquittal considers all of the evidence in the light most favorable to the government and grants the motion when it appears to the court that the evidence is insufficient to sustain a conviction.

Additionally, pursuant to Fed. R. Crim. P. Rule 33, a trial court may grant a new trial to a defendant if required in the interest of justice.  Motions for a new trial may be based either on the ground that the verdict was against the weight of

13

the evidence or that some error occurred at trial which substantially affected the rights of the accused. *United States v. Simms*, 508 F. Supp. 1188, 1202 (W.D. La. 1980). The decision to grant or deny a new trial based on allegations that the verdict was against the weight of the evidences is within the sound discretion of the trial court. *United States v. Martinez* , 763 F.2d 1297, 1312 (11th Cir. 1985).

**Law and Argument:**

The Fifth Amendment to the United States Constitution states that "[n]o person shall be held to answer for a capital, or otherwise infamous crime . . . nor shall be deprived of life liberty, or property, without due process of law." U.S. Const., amend. V. In evaluating due process claims, this Court inquires whether the practice "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Snyder v. Massachusetts*, 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934). As stated by Justice Frankfurter, due process

> embodies a system of rights based on moral principles so deeply imbedded in the traditions and feelings of our people as to be deemed fundamental to a civilized society as conceived by our whole history. Due process is that which comports with the deepest notions of what is fair and right and just.

*Solesbee v. Balkcom*, 339 U.S. 9, 16, 70 S. Ct. 457, 461, 94 L. Ed. 604 (1950).

14

The Due Process Clause prohibits actions that "violate those fundamental conceptions of justice which lie at the base of our civil and political institutions and which define the community's sense of fair play and decency." *United States v. Lovasco,* 431 U.S. 783, 790, 97 S.Ct. 2044, 2049, 52 L.Ed.2d 752 (1977). The Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." *Dowling*, 493 U.S. at 352-53, 110 S.Ct. at 674. The "primary guide in determining whether the principle in question is fundamental is, of course, historical practice." *Montana v. Egelhoff*, 518 U.S. 37, 41-44, 116 S.Ct. 2013, 2017, 135 L.Ed.2d 361 (1996).

There can be little doubt that the right to be found guilty only upon a finding of guilt beyond a reasonable doubt is a critical part of the criminal justice system. In *Cage v. Louisiana*, 489 U.S. 39 (1990), the Supreme Court emphasized the vital role of the reasonable doubt standard in avoiding convictions based upon factual error:

> (T)he Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970) . . . This reasonable doubt standard "plays a vital role in the American scheme of criminal procedure. <u>Id</u>. at 363. Among other things, it is a prime instrument for reducing the risk of convictions resting on factual error.

15

*Cage*, 498 U.S. at 39-40 (1990). The *Winship* decision itself makes clear that the requirement of proof beyond a reasonable doubt is grounded upon accuracy concerns:

> The requirement of proof beyond a reasonable doubt has this vital role in our criminal procedure for cogent reasons. The accused during a criminal prosecution has at stake interest of immense importance, both because of the possibility that he may lose his liberty upon conviction and because of the certainty that he would be stigmatized by the conviction. Accordingly, a society that values the good name and freedom of every individual should not condemn a man for commission of a crime when there is reasonable doubt about his guilt.

*Winship*, 397 U.S. at 364. The Court in *Winship* specifically rejected the margin of error permitted by a preponderance standard:

> There is always in litigation a margin of error, representing error in factfindings, which both parties must take into account. Where one party has at stake an interest of transcending value - as a criminal defendant his liberty - this margin of error is reduced as to him by the process of placing on the other party the burden of . . . persuading the factfinder at the conclusion of the trial of his guilt beyond a reasonable doubt. Due process commands that no man shall lose his liberty unless the Government has borne the burden of . . . convincing the factfinder of his guilt. To this end, the reasonable doubt standard is indispensable, for it impresses on the trier of fact the necessity of reaching a subjective state of certitude of the facts in issue.

*Winship*, 397 U.S. at 364.

16

In the present case, the government failed to present evidence sufficient to prove the Appellants committed the crime of Sex Trafficking of a Child as charged in Count 3 of the indictment. To sustain its burden of proof under 18 U.S.C. §1591(a)(2), the government must prove the following three essential elements beyond a reasonable doubt: That the defendant, "(1) did knowingly recruit, entice, harbor, transport, provide, obtain, and maintain, by any means; (2) in and affecting interstate commerce; (3) knowing and in reckless disregard of the fact that the person had not attained the age of 18 years and would be caused to engage in a commercial sex act." 18 U.S.C. §1591(a)(2).

A judgment of acquittal based on the insufficiency of evidence is a ruling by the court that, as a matter of law, the government's evidence is insufficient "to establish factual guilt" on the charges in the indictment. *Smalis v. Pennsylvania*, 476 U.S. 140, 144, 90 L.Ed.2d 116, 106 S.Ct. 1745 (1986); *United States v. Alvarez*, 351 F.3d 126 129 (4th Cir. 2003); Fed. R. Crim. P. 29(a). A judgment of acquittal notwithstanding the verdict is appropriate "when there is no evidence upon which a reasonable mind might find guilt beyond a reasonable doubt." *United States v. Hernandez*, 251 U.S. App. D.C. 5, 780 F.2d 113, 120 (D.C. Cir. 1986); *United States v. Byfield*, 289 U.S. App. D.C. 71, 928 F.2d 1163, 1165 (D.C. Cir. 1991). The relevant question is whether, viewing the evidence in the light most

17

favorable to the government, and recognizing that it is the fact finder's province to determine credibility and to weigh the evidence, a reasonable fact finder must necessarily entertain a reasonable doubt on the evidence presented. *United States v. Singleton*, 226 U.S. App. D.C. 422, 702 F.2d 1159, 1163 (D.C. Cir. 1982) (panel decision); *United States v. Johnson*, 293 U.S. App. D.C. 213, 952 F.2d 1407, 1409 (D.C. Cir.1992); *see also Glasser v. United States*, 315 U.S. 60, 80, 86 L.Ed. 680, 62 S.Ct. 457 (1942) (taking the view most favorable to the Government, is there substantial evidence to support the verdict).

The evidence presented at trial in support of Count Three established that Barcus recruited Joshua, TJ, and DS to travel to Herndon, Virginia. The Appellants played no role in this decision. The Appellants took no part in paying for or securing anyone's accommodations in Virginia but their own. The Appellants did not pay for Greyhound tickets for TJ, DS, or Joshua. Ms. Rooke took no part in picking them up at the station in Richmond, Virginia. The Appellants played no role in TJ's sexual solicitations while she was in Herndon. The Appellants were simply in the presence of TJ, DS, and Joshua during the first day of their arrival in Virginia. Although they stayed in the same hotel for one night, they were in separate rooms. J.A. 1452. The next day, the Appellants moved to a different hotel.

18

Count Three alleges that the Appellants participated in the sex trafficking of TJ between December 9 and 11 of 2012.  The evidence presented at trial, however, established that the Appellants were not participants in any of the events which led to TJ's exploitation.  Every act necessary to bring TJ to Virginia, to arrange a commercial sex act, and to complete it was accomplished by Barcus, Joshua, DF, or others.  No evidence indicated that either Appellant intended to bring TJ across state lines to engage in commercial sex acts.  The Appellants were never more than mere bystanders.  When TJ engaged in commercial sex acts, they were not even present.

If a rational trier of fact reasonably could have concluded that the prosecution proved the elements of the crime beyond a reasonable doubt, the evidence is sufficient to uphold the conviction. *See, e.g.*, *United States v. Gomez*, 369 U.S. App. D.C. 28, 431 F.3d 818, 819 (D.C. Cir. 2005).  It is important to note that the jury acquitted the Appellants of Count Four which charged them with sexually trafficking TJ's traveling companion, DS, during the exact same time frame.  What rational basis exists for acquitting the Appellants of Count Four but convicting them of Count Three?  One does not exist in the evidence.

As the government failed to prove the necessary elements of the crime charged, the Appellants submit that their convictions must be vacated and this

19

matter remanded for rehearing consistent with the findings of this Court.

## II.    The Jury Received Improper, Additional Instructions From the Court Which Altered the Previously Stated Elements of Proof After Closing Argument Resulting in Prejudicial Error to the Appellants.

### Standard of Review

This Court reviews a "district court's decision to give or refuse to give a jury instruction for abuse of discretion." *United States v. Passaro*, 577 F.3d 207, 221 (4th Cir. 2009) (citing *United States v. Moye*, 454 F.3d 390, 397-98 (4th Cir. 2006)).

### Law and Argument

A.  The Appellants were prejudiced by their counsels' inability to fully argue their clients' defense following supplemental jury instructions which altered the manner in which the jury was instructed to apply the applicable law to the facts of the case.  On September 13, after deliberating for over one full day, the jury sent out a note indicating it was deadlocked.  The note requested further instruction on how element two of the offense regarding a reasonable opportunity to observe a person's age could be reconciled with the statement in Jury Instruction 17 that evidence of mere presence is insufficient to establish guilt.  In response, the trial court stated that the "government can establish the element pertaining to the knowledge of the alleged victims'ages. . . in any of 3 ways. . . . The government does not need to do so in all 3 ways."  Previously, the elements of proof of

20

knowledge of age had not been presented as three closely linked methods provable in the disjunctive.  In fact, they had been split into two separate jury instructions.

In *United States v. Horton*, 921 F.2d 540, 546-549 (4th Cir. Va. 1990), the Court stated it is "well established that the necessity, extent and character of any supplemental instructions to the jury are matters within the sound discretion of the district court."  *See also, United States v. Franco*, 874 F.2d 1136, 1143 (7th Cir. 1989); *United States v. Walther*, 867 F.2d 1334, 1341 (11th Cir. 1989); *United States v. Duvall*, 846 F.2d 966, 977 (5th Cir. 1988).  In fact, the trial court has a duty "when a jury makes explicit its difficulties" to "clear them away with concrete accuracy." *Bollenbach v. United States*, 326 U.S. 607, 612-13, 90 L. Ed. 350, 66 S. Ct. 402 (1946).

However, to restructure the method of proof on this crucial element at this stage of the proceeding following the jury's proclamation of deadlock clearly prejudiced the Appellants.  Not only did it leave defense counsel with no opportunity to address the jury on the refashioned findings instruction, it invaded the province of the jury.  The jury had stated they were at impasse.  In response, the trial court reconfigured the finding instruction and highlighted a crucial fact: the government can prove knowledge in one of three ways.  This was clear error. *See U.S. v. Peterson,* 513 F.2d 1133, 1137 (1975) (reversing defendant's

21

conspiracy to dispose of property without authority conviction when the jury's question demonstrated confusion by the issue of intent and trial judge provided supplemental instruction that "ignorance of the law is no excuse" because the instruction, although a correct statement of the law, left a prejudicial impression up on the jury); *Powell v. United States,* 347 F.2d 156 (9th Cir. 1965)(reversing conviction where trial court's instructions in response to jury inquiry may have misled the jury on a vital issue);

B.    Two basic principles underlie the federal law of aiding and abetting.  First, by statute, "whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." 18 U.S.C. §2 (1969 & Supp. 1990).  Second, "in order to aid and abet another to commit a crime, it is necessary that a defendant 'in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed.'" *Nye & Nissen v. United States,* 336 U.S. 613, 619, 93 L. Ed. 919, 69 S. Ct. 766 (1949) (quoting *United States v. Peoni,* 100 F.2d 401, 402 (2d [**9] Cir. 1938)). Simply put, "aiding and abetting means to assist the perpetrator of the crime." *United States v. Williams,* 341 U.S. 58, 64, 95 L. Ed. 747, 71 S. Ct. 595 (1951).

22

Further, no instruction may be given unless there is "a foundation in the evidence" to support it. *Wells v. Murray,* 831 F.2d 468, 477 (4th Cir. 1987). In the present case, the Court's supplemental instruction was not supportable because there was no evidence that the Appellants associated themselves with the venture, that they participated in it with the intent to bring it about, or that they sought by their actions to make it succeed. *See Nye & Nissen v. United States,* 336 U.S. at 619.

Significantly, the supplemental aiding and abetting instruction in this case was given in response to jury questions regarding the elements required to establish knowledge of the victims' ages. J.A. 1145. The trial court's decision to instruct the jury on aiding and abetting was prejudicial error in light of the court's failure to afford the Appellant's counsel the opportunity to respond. J.A. 1145-1146. In order to properly instruct on said questions, the district court must show that it "obtained the views of counsel before giving [the] supplementary instruction," "require[d] communications from the jury to be in writing or made in open court," and "preserve[d] [the] written questions as part of the record." *United States v. Polowichak*, 783 F.2d 410, 413 (4th Cir. 1986). *United States v. Horton*, 921 F.2d 540, 546-549 (4th Cir. Va. 1990).

23

Though the giving of the supplemental instruction may or may not have been proper, its effect on the trial must be examined carefully because a defendant must have an adequate opportunity to argue his innocence under the district court's instructions in order to be assured a fair trial. The purpose of Federal Rule of Criminal Procedure 30 -- which provides that the "court shall inform counsel of its proposed action upon the requests [for particular jury instructions] prior to their arguments to the jury" -- is "to require the district court to inform the trial lawyers in a fair way what the instructions are going to be in order to allow counsel the opportunity to argue the case intelligently to the jury". *United States v. Gaskins*, 849 F.2d 454, 458 (9th Cir. 1988). See *Annotation, Court's Duty to Inform Counsel of Proposed Action on Requested Instructions under Rule 30 of Federal Rules of Criminal Procedure*, 40 A.L.R. Fed. 495 (1978). *United States v. Horton*, 921 F.2d 540, 546-549 (4th Cir. Va. 1990).

Prejudice occurred due to a Rule 30 violation in this case because counsel did not have the opportunity to fully argue their case in light of the supplemental instructions in question. Further, just as a technical violation of Rule 30 requires reversal only when the defendant can show actual prejudice, *United States v. Burgess*, 691 F.2d 1146, 1156 (4th Cir. 1982), a technical satisfaction of Rule 30 cannot prevent reversal where actual prejudice is clear. The fact that the defendant

24

may have been earlier on notice that the theory of aiding and abetting was potentially relevant to this case would not prevent a finding of a violation of Rule 30. Only notice that a particular instruction would be given and an adequate time to argue on that instruction could satisfy the purposes of Rule 30. *United States v. Horton*, 921 F.2d 540, 546-549 (4th Cir. Va. 1990).

To be sure, Rule 30 is implicated where a new theory is presented to the jury in a supplemental instruction after closing argument and the court generally should give counsel time for additional argument. See *United States v. Civelli*, 883 F.2d 191, 196 (2nd Cir. 1989) (in special cases, principles underlying Rule 30 may require additional argument*); Loveless v. United States*, 104 U.S. App. D.C. 157, 260 F.2d 487, 488 (D.C. Cir. 1958); *Downie v. Powers*, 193 F.2d 760, 767 (10th Cir. 1951). Adequate additional argument can cure any prejudice experienced as a result of supplemental instructions. While limitations on the scope or extent of argument are plainly within the discretion of the trial judge, *United States v. Carter*, 760 F.2d 1568, 1581 (11th Cir. 1985), an abuse of discretion may be found when the contested limitations on argument "prevent[] defense counsel from making a point essential to the defense." *United States v. Sawyer*, 143 U.S. App. D.C. 297, 443 F.2d 712, 713 (D.C. Cir. 1971). The better exercise of discretion would have been to provide additional argument. *United States v. Horton*, 921 F.2d

25

540, 546-549 (4th Cir. Va. 1990).

As the district court therefore erred in failing to provide the Appellants' counsel time to challenge the jury instructions in question, the Appellants respectfully requests that this Court vacate their resulting convictions and remand the cases to the trial court for further proceedings consistent with this Court's ruling.

## CONCLUSION

**WHEREFORE**, the Appellants-Defendants, **KOYA TIFFANY ROOKE** and **QUINTAVIS DEONTE DUMAS**, by and through their respective counsel, respectfully request this Honorable Court to enter a Judgment of Acquittal for both Appellants as to the charge contained in Count Three of the Indictment against them and to dismiss their convictions with prejudice. In the alternative, the Appellants request that this Honorable Court find that the convictions against them were the product of prejudicial error, reverse said convictions and remand the cases to the district court for further proceedings consistent with the Court's ruling.

Respectfully submitted,

THE IWEANOGES FIRM, PC

Dated: May 1, 2014                By:    _____/s/_____

John O. Iweanoge, II
IWEANOGE LAW CENTER
1026 Monroe Street, NE
Washington, D.C. 20017
Phone: (202) 347-7026
Fax:    (202) 347-7108
Email: joi@iweanogesfirm.com
*Counsel for Appellant*
*Koya Tiffany Rooke*

27

_____/s/_____
James W. Hundley
BRIGLIA HUNDLEY, P.C.
1921 Gallows Road, Suite 750
Vienna, Virginia 22182
Phone: (703) 883-0880
jhundley@brigliahundley.com
*Counsel for Appellant*
*Quintavis Deonte Dumas*

## STATEMENT REGARDING ORAL ARGUMENT

Defendants-Appellants Koya Tiffany Rooke and Quintavis Deonte Dumas respectfully request oral argument in this matter, as they believes at this time that argument would assist the Court in analyzing the issues raised in this appeal and the rather unusual circumstances of the case.

29

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), typeface requirements of Fed.R.App.P. 32(a)(5), and typeface requirements of Fed.R.App.P. 32(a)(5).   This brief does not exceed 37 pages, and contains 7,041 words and been prepared in a proportionally spaced typeface using Times New Roman, 14 point font.

John O. Iweanoge, II
James W. Hundley, Esq.
Attorneys for the Appellants

## CERTIFICATE OF SERVICE

I certify that on this 1st day of May, 2014 a true copy of the foregoing opening brief of Defendants-Appellants Koya Tiffany Rooke and Quintavis Deonte Dumas was filed electronically in this Court's EFC system constituting delivery upon:

Michael J. Frank, AUSA
Christine Bogle, SAUSA
United States Attorneys' Office
for the Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, Virginia 22314

_____/S/_____
John O. Iweanoge, II
THE IWEANOGES FIRM, PC
IWEANOGE LAW CENTER
1026 Monroe Street, NE
Washington, D.C.  20017
Phone:  (202) 347-7026
Fax:     (202) 347-7108
Email:  joi@iweanogesfirm.com
Attorneys for Appellant

31